# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

WILLIE A. VIGIL,

      Plaintiff,

v.                                                    Civil No. 01-0649 WJ/LFG

PUBLIC SERVICE COMPANY OF
NEW MEXICO, a New Mexico
Business Corporation, and LEX SMUTS,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court following oral argument on Defendants' Motion for Summary Judgment, filed February 27, 2002 **(Doc. 46)** and Plaintiff's Motion to Amend, filed March 4, 2002 **(Doc. 51)**. Having considered the parties' briefs and the applicable law, I find that Defendants' motion is well-taken in part and will be granted in part; not well-taken in part and denied in part; and that Plaintiff's motion is denied as moot.[1]

### Background and Procedural History

Willie Vigil was employed as a mechanic by the Public Service Company of New Mexico ("PNM") from 1975 to 1999. He held the position of chief mechanic at the time he was discharged in 1999. Plaintiff contends that he was set up and fired by management as a direct result of his opposition to unsafe working conditions and practices. Defendants' position is that Mr. Vigil was terminated because he failed to complete work on a company vehicle and falsified

---

[1] The hearing was held on June 10, 2002 on the motions. Parties were given the opportunity to file supplemental briefs on the issue of administrative exhaustion. The Court has considered these additional briefs in these findings.

an invoice. Mr. Vigil was a member of the International Brotherhood of Electrical Workers Local Union No. 611 ("Union") and covered by a Collective Bargaining Agreement ("CBA") between PNM and the Union. After his termination, he filed a grievance with his union, which subsequently withdrew a request for arbitration on the grounds that Plaintiff's case lacked merit. *Exs. R & S, Mem. in Supp. of Mot. for Sum. J.*.

This case, based on the same underlying incidents and facts, was removed to federal court once before, as Civil No. 00-0111 JC/RLP before the Hon. John E. Conway. That complaint consisted of claims based on retaliatory discharge, negligence/negligent supervision, breach of contract, and intentional infliction of emotional distress ("IIED"). Judge Conway found that the negligence, breach of contract and portions of the IIED claims that were based on Defendant's actions in conducting its investigation were preempted under the § 301 of the Labor Management Relations Act ("LMRA").[2] The Court dismissed these claims without prejudice because they were premature and not exhausted under the CBA. The Court also declined to exercise supplemental jurisdiction over state claims of retaliatory discharge and portions of the IIED claim which were based on Defendant's conduct associated with retaliatory discharge and which were found not to be preempted. These claims were remanded back to state court. *See Civil No. 00-0111 JC/RLP, Court Order of 6/13/00, Doc. 8* ("6/13/00 Order, Civ. No. 00-0111").

Following discovery in state court, the Plaintiff amended the complaint, dropping claims of breach of contract and negligence, and adding counts of civil conspiracy (Count II) and tortious

---

[2] 29 U.S.C. §185.

2

interference with contractual relations (Count III).[3] The amended complaint also adds a former supervisor, Lex Smuts, as a party. Mr. Smuts made the actual decision to terminate Plaintiff. Based on the added claims in the amended complaint, PNM again removed the case to federal court.

*Legal Standard*

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). W here the nonmoving party will bear the burden of proof at trial on a dispositive issue, that party must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

*Discussion*

Defendants argue that Plaintiff's claims of civil conspiracy, tortious interference with contractual relations, portions of the IIED claim and retaliatory discharge are preempted under § 301 of the LMRA. At the same time, Defendants seek dismissal of these claims because they are not completely exhausted under the grievance procedure set forth in the CBA and thus are prematurely before this Court.

*Preemption*

<u>IIED</u> *(portions of claim based on Defendant's actions in conducting its investigation)*

---

[3] The first amended complaint alleges retaliatory discharge and IIED claims (Counts I and IV, respectively).

Judge Conway determined that part of this claim is preempted under § 301, finding that "the outrageousness of Defendants' actions associated with the investigation of Plaintiff or in terminating Plaintiff in accordance with company policy cannot be determined 'without [also] determining whether the conduct was allowed under the CBA.'" *See 6/13/00 Order at 4, Civ. No. 00-0111*) (quoting *Johnson v. Beatrice Foods Co.,* 921 F.2d 1015, 1020 (10th Cir. 1990)). The issue of whether this claim has been exhausted is discussed below.[4]

*Tortious Interference with Contractual Relations*

As I concluded during the recent June 10th hearing, Plaintiff's claim for tortious interference with contractual relations is preempted under the LMRA. *See*, *Steinbach v. Dillon Companies, Inc.*, 253 F.3d 538, 541 (10th Cir. 2001) (manager was justified in instituting disciplinary proceedings required evaluation the manager's authority under the collective bargaining agreement, and therefore the tortious interference claim was preempted under § 301 of the LMRA).[5]

Assuming the "contract" envisioned in this tort claim to be that between the Plaintiff and

---

[4] I need not engage in further discussion of the merits of the nonpreempted portion of the IIED claim, i.e., the portion based on retaliatory discharge, in light of the fact that the merits of Plaintiff's claims will be dealt with in state court on remand.

[5] This conclusion has support from various other circuits that have addressed the issue: *Kimbro v. Pepsi Co., Inc.*, 215 F.3d 723 (7th Cir. 2000) (worker who is covered by collective bargaining contract may not recharacterize breach of contract suit as suit for tortious interference with contract in order to avoid exclusive jurisdiction of federal law over claims for breach of collective bargaining contract); *Turner v. American Fed'n of Teachers Local 1565*, 138 F.3d 878 (11th Cir. 1998) (employee's claim that employer's former and current presidents tortiously interfered with her employment relationship causing her to be terminated was preempted by LMRA because resolution of claim required interpretation of collective bargaining agreement); *see also Nagrer v. John Sexton & Co*., 912 F.2d 525, 530 (1st Cir. 1990); *Johnson v. Anheuser Busch, Inc*., 876 F.2d 620, 624 (8th Cir. 1989); *Scott v. Machinist Automotive Trades District Lodge, No. 190 of N. Cal*., 827 F.2d 589 (9th Cir. 1987).

PNM, the question of whether Defendant smuts meant to interfere with the operation of that contract necessarily requires an examination and analysis of the terms of the CBA. Whether Plaintiff's discharge met the "reasonable cause" or "justifiable reasons"standard in the CBA, *Ex. A. at 5., Pltff's Supp. Brf. on Exhaustion*, involves an interpretation of the contract's provisions as they relate to terminating an employee.[6]

*Civil Conspiracy Claim*

The question of preemption with regard to Plaintiff's claim of civil conspiracy depends on whether an inquiry on the claim is based on the internal events of his grievance investigation and termination. If so, they are preempted. *Mock v. T.G.& Y Stores.*, 971 F.2d 522 (10th Cir. 1992).[7]

Plaintiff claims that Defendant Smuts had threatened to conduct a separate investigation resulting in Plaintiff's termination if he did not drop his safety concerns, and that Defendant conspired with an employee named Greg Tipton to sabotage a work order in order to make it look like Plaintiff did not complete work on a truck which he represented to have done. According to Plaintiff, Mr. Tipton had clashed with Plaintiff over a work schedule Plaintiff wanted to propose. Tipton also was promoted to Plaintiff's former position of Chief Mechanic after Mr. Vigil was fired. Plaintiff theorizes that work was undone by PNM employees who sabotaged Mr.

---

[6] A plaintiff must prove the following to establish tortious interference with contract: (1) defendant had knowledge of the contract between plaintiff and a third party; (2) performance of the contract was refused; (3) defendant played an active and substantial part in causing plaintiff to lose the benefits of his contract; (4) damages flowed from the breached contract; and (5) defendant induced the breach without justification or privilege to do so. *Ettenson v. Burke*, 130 NM 67, 72 (2000).

[7] To establish liability for a civil conspiracy, plaintiff needs to demonstrate: (1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts. *Ettenson*, 130 NM at 72.

5

Vigil's work on the vehicle and conspired to "set up" his termination. PNM also authorized an independent audit at Crawford Chevrolet for the vehicle Mr. Vigil was supposed to have repaired. Plaintiff alleges that questions should have been raised, but were not, during the audit concerning whether Plaintiff's work on the truck could have been undone to make it look as though Plaintiff did not complete the job.

Viewing the specific allegations of this claim, I find that an inquiry into allegations that Defendant Smut conspired with other to set up Plaintiff for discipline and dismissal does not require a reference to an employer's conduct permitted under the terms of the CBA. The alleged conduct would appear to be out of bounds of any employment contract, including the CBA between Plaintiff and PNM. *See Garley v. Sandia Corp.*, 236 F.3d 1200, 1203 (10th Cir. 2001) (where investigation into timecard fraud was initiated and surveillance instituted allegedly because employer had a "personal axe to grind and a racist aversion toward plaintiff," district court erred in finding that civil conspiracy claim was preempted by § 301 because claim did not require interpretation of CBA). The situation in *Albertson's, Inc. v. Carrigan*, involving an employer's fabrication of the employee's theft of groceries, is reminiscent of the role Defendant Smuts is alleged to have had in Mr. Vigil's termination. *See* 982 F.2d 1478 (10th Cir. 1993) (employer allegedly fabricated the employee's theft of groceries and had her arrested).

<u>Retaliatory Discharge</u>

This claim has already been found not to be preempted by § 301. *See 6/13/00 Order at 3-4, Civ. No. 00-0111* ("There is no need to analyze the CBA in order to discern Defendant's[8] motives for terminating Plaintiff or to determine whether Defendant's conduct violated public

---

[8] PNM was the only Defendant at the time Judge Conway's Order was entered.

policy"). However, Defendants' summary judgment on this count is premised on a recent New Mexico case decided since the time Judge Conway first addressed the issue, and which appears to eliminate the availability of a retaliatory discharge claim for employees who are not at-will. *See Silva v. American Federation of State, County and Municipal Employees et al.*, 131 NM 364 (2001) ("*Silva II*").

Under *Silva II*, an employee who is subject to a collective bargaining agreement cannot maintain an action for retaliatory discharge. Plaintiff questions the applicability of *Silva's* holding where a contract employee's available grievance procedure is curtailed prior to its completion. The New Mexico Supreme Court did not make a distinction for this situation in *Silva II*. Whether such a distinction should be made for this case is an issue that is more appropriately resolved in state court. Because I am remanding Plaintiff's remaining (nonpreempted) claims to state court, I find it unnecessary to pass on this issue.

*Exhaustion of Administrative Remedies*

Exhaustion is required under the LMRA for claims of violations of a contract between an employer and labor organization prior to filing suit on these claims in federal court. This requirement also extends to claims that are preempted under § 301 when resolution of the claim depends upon an analysis of a labor agreement. *See* 29 U.S.C. § 185; *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976); *Garley v. Sandia*, 236 F.3d 1200, 1208 (10th Cir. 2001) (preemptive effect of § 301 not limited to state suits alleging violations of labor contracts, but includes labor-contract disputes that require uniform federal interpretation); *Albertson's Inc. v Carrigan*, 982 F.2d 1478, 1480 (10th Cir. 1993). By the same token, claims that are not preempted are not bound by the statute's strictures of administrative exhaustion.

Judge Conway's previous determination that Plaintiff's preempted claims in the original complaint were not exhausted was based primarily on Plaintiff's concession of nonexhaustion.[9] However, an employee will be excused from exhausting administrative remedies where (1) either the union or the employer has repudiated the CBA's grievance procedures or (2) where the union has breached its duty of fair representation by acting arbitrarily, discriminatorily, or in bad faith. *See United Food and commercial Workers, Local Union No. 7R v. Safeway Stores, Inc., et al.*, 889 F.2d 940, 943 (10th Cir. 1989); *Vaca v. Sipes*, 386 U.S. 171, 185-86 (1967) ("hybrid" suit is a judicially created exception to the general rule that an employee is bound by the result of grievance or arbitration remedial procedures provided in a collective-bargaining agreement).

Thus, a plaintiff could be excused from the failure to exhaust the preempted claims by instituting a "hybrid" claim in which he alleges *both* § 301 claims against his employer *and* that his ability to exhaust the grievance procedure was thwarted by his union's breach of duty to fairly represent him. The "catch" here is that the union's breach of fair representation must be proved before a case against the employer may proceed. *See Vaca*, 386 U.S. 171, 185-86 & n.11; *Edwards,* 46 F.3d 1047, 1051 (federal law permits an employee to pursue a § 301 action against his employer notwithstanding the outcome or finality of the grievance or arbitration process, "provided the employee simultaneously proves he would have obtained a remedy under the agreement but for the union's misconduct"); *Webb v. ABF Freight System, Inc.,* 155 F.3d 1230, 1242 (10th Cir. 1998)(union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures "if it seriously

---

[9] Judge Conway found that removal of the preempted claims was premature. *See 6/13/00 Order at 3, Civ. No. 00-0111, Doc. 8).*

undermines the integrity of the arbitral process") (citing *Hines*, 424 U.S. at 572; *Baker v. Interstate Brands Corp.* 801 F.Supp. 456, 462 (D.Kan. 1992) (plaintiff must first prove that the union breached its duty of fair representation).

Defendants are correct that Plaintiff's proper remedy following the Union's rejection of arbitration was to bring this type of "hybrid" action against the Union and PNM, but that neither the original complaint nor the First Amended complaint contain a reference to a breach of the Union's duty of fair representation, or claims against PNM brought under § 301 of the LMRA. *See Resp. to Mem. Brf. on Exhaustion*, at 3 & 5.[10]  Plaintiff does not dispute this observation, but rather states that he has opted not to bring allegations against the Union which would form the basis of a "hybrid" claim. Plaintiff further states that because "PNM covered its tracks well, it would be difficult . . . to prove that the Union breached its duty of fair representation. . . [i]n other words, a Section 301 action under the LMRA would have missed the mark." *Supp. Brf. on Exhaustion at 3*.[11]

---

[10] Notwithstanding the fact that Plaintiff's First Amended Complaint is premised solely on state law claims, once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim and therefore arises under federal law. *See Caterpillar, Inc., et al v. Williams et al.*, 482 U.S. 386, 392 (1987) (citations omitted). Thus, because the complaint should be considered to have alleged § 301 claims from the time of its filing, there is no merit to Defendant's statute of limitations defense. *See Edwards v. Internat'l Union, United Plant Guard Workers of America(UPGWA) et al*, 46 F.3d 1047, 1051(10th Cir. 1995) (noting application of six-month statute of limitations for "hybrid" claim of § 301/unfair representation actions).

[11] Plaintiff need not have sued the Union as a party in order to bring a "hybrid" claim. The employee's claim against his employer and unfair representation claim against the union are "inextricably interdependent," regardless of whether the employee sues the employer, the union, or both. *See Edwards*, 46 F.3d at 1051 (citing *DelCostello v. Internat'l Brotherhood of Teamsters et al.*, 462 U.S. 151, 163-64 (1983)).

9

Plaintiff seeks to pursue remaining claims that are not preempted.[12] Nevertheless, the issue of exhaustion for the preempted claims must be resolved before this Court has jurisdiction to hear the non-preempted state law claims. Either the preempted claims are exhausted, which would allow Plaintiff's case to continue in this forum; not exhausted, which would eliminate a basis for federal jurisdiction; or if not exhausted, Plaintiff can argue he has been prevented from exhausting his contractual remedies by the Union's wrongful refusal to process the grievance.

Only one of these possibilities applies to this case. Plaintiff acknowledges that he went no further than step two of the grievance process under the CBA because he was unable to take it any further and was thus bound by union's decision not to arbitrate. However, the Union's decision not to pursue arbitration does not in itself constitute exhaustion for the preempted claims, and Plaintiff's reliance on case law in support of that proposition is misplaced.[13] In the CBA at issue in this case, the grievance procedure is the exclusive means of resolving disputes. *Ex. A at 5-6, Pltff's Supp. Brf. on Exhaustion*. However, Plaintiff is not pursuing allegations that

---

[12] Plaintiff recognizes the Court's ruling that his tortious interference claim is preempted under § 301, *Supp. Brf. on Exhaustion at 8*, but maintains that the other claims are not.

[13] The holding in *Croston v. Burlington Northern Railroad Co.,* 999 F.2d 381 (9th Cir. 1993) comes out against Plaintiff's position, where the court found no triable action against the union. The facts in *United Food and Commercial Workers, Local Union NO. 7R*, 889 F.2d 940 are considerably atypical to those in the present case. Plaintiff in that case had pursued her claims to arbitration, but the union refused to honor the award. Although plaintiff had not exhausted the bad faith claim against the Union for failure to enforce the award, the court recognized that exhaustion on that issue was not required, since the Union had at that point "ceased to function" as plaintiff's representative. At. 946. The holding was limited to situations where a plaintiff pursues the grievance procedures to the final stage authorized under the collective bargaining agreement *and* the Union fails to honor or enforce the award – neither of which occurred here.
   In *Vaca*, 386 U.S. 171, union took the grievance to arbitration, but there was no evidence that the union breached the duty to fairly represent the plaintiff. The focus of the holding in *Robinson v. Central Brass Manufacturing Co. et al*, 987 F.2d 1235 (6th Cir. 1993) was the tolling of the limitations period during the pendency of a grievance.

the Union unfairly represented him.  Accordingly, the Court must consider his preempted claims under § 301 as unexhausted and conclude that federal jurisdiction over the Plaintiff's action does not exist.

Remand is therefore appropriate for the remaining state claims of the IIED claim associated with retaliatory discharge, civil conspiracy and retaliatory discharge.  I decline to address the question of *Silva II's* applicability to Plaintiff's retaliatory discharge claim as well as Plaintiff's Motion to Amend to Add Claim of Prima Facie Tort.  The latter becomes moot with the dismissal of the case from this forum.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment **(Doc. 46)** is GRANTED IN PART AND DENIED IN PART, as set out above;

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend **(Doc. 51)** is DENIED as MOOT in light of the disposition of this case;

**IT IS FINALLY ORDERED** that this action shall be remanded to state court in the First Judicial District Court of the State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE